## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JADA NETTLE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff<br><br>v.<br><br>THE HERSHEY COMPANY<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.      Plaintiff Jada Nettle ("Plaintiff") individually and on behalf of all others similarly situated brings this Class Action Complaint against The Hershey Company ("Defendant" or "Hershey") for Defendant's reckless and/or intentional practice of failing to disclose the presence of organic fluorine and/or per- and polyfluoroalkyl substances ("PFAS") in the packaging of several of Defendant's chocolate products (collectively, the "Chocolate Products").[1]

2.      PFAS are known as "forever chemicals" due to their inability to break down in the environment over time. PFAS are dangerous compounds and have been shown to cause serious health issues such as cancer, hormone disruption, liver and thyroid problems, interference with vaccine effectiveness, reproductive harm, and abnormal fetal development. The United States Environmental Protection Agency

---

[1] The Chocolate Products include at this time Hershey's Milk Chocolate Bar, Hershey's Cookies 'n' Crème Bar, Hershey's Kisses, Reese's Peanut Butter Cups, Reese's Pieces, Almond Joy, Mounds, and Kit Kat Bar.  Plaintiff reserves the right to add additional products as appropriate.

("EPA") has found that "the latest science show[s] that there is no level of exposure to these contaminants without risk of health impacts, including certain cancers."[2] PFAS have been scientifically shown to migrate from food packaging, such as candy wrappers, into the food itself.[3]

3.      Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full disclosure of all such substances on the Chocolate Products and their packaging, and restoring monies to the members of the proposed Classes, who would not have purchased the Chocolate Products had they known they contained PFAS or would not have paid premium prices for the Chocolate Products had they known the truth about the existence of PFAS in the Chocolate Products. Plaintiff alleges the following based upon personal knowledge, as well as investigation by her counsel, and as to all other matters, upon information and belief.

<u>**NATURE OF THE ACTION**</u>

4.      Hershey specifically represents to consumers that it is "committed to transparency and support[s] consumers' right to know what is in their food."[4] Hershey further represents that it "hold[s] [itself] to the highest quality, safety, and sustainability standards."[5] According to a survey conducted by Newsweek and

---

[2] *Biden-Harris Administration Finalizes First-Ever National Drinking Water Standard to Protect 100M People from PFAS Pollution*, https://www.epa.gov/newsreleases/biden-harris-administration-finalizes-first-ever-national-drinking-water-standard (last visited Nov. 1, 2024).
[3] *Per- and Polyfluoroalkyl Substances in Food Packaging: Migration, Toxicity, and Management Strategies*, National Library of Medicine: National Center for Biotechnology Information, https://pmc.ncbi.nlm.nih.gov/articles/PMC10993423 (last visited Nov. 1, 2024).
[4] *About our Ingredients*, Hershey, https://www.thehersheycompany.com/en_us/home/ingredients/about-our-ingredients.html (last Nov. 1, 2024).
[5] *Id.*

Statista, Hershey ranks third in the food and beverage industry as one of the World's Most Trusted Companies in 2024.[6]

5.    Reasonable consumers, like Plaintiff, expect that the Chocolate Products they purchase for their individual and family consumption will not be contaminated (or have a material risk of being contaminated) with PFAS, substances known to be "forever chemicals," that are linked to a wide range of health risks such as cancer, hormone disruption, liver and thyroid problems, interference with vaccine effectiveness, reproductive harm, and abnormal fetal development. PFAS are scientifically known to migrate from food packaging, such as candy wrappers, into the food itself.[7]

6.    Consumers lack the scientific knowledge necessary to determine whether Defendant's Chocolate Products do in fact contain PFAS, or to ascertain the true nature of the substances used to produce and package the Chocolate Products. Accordingly, reasonable consumers must and do rely on Defendant to know what its products contain and properly and fully disclose those contents. Product contents, particularly contents like dangerous PFAS, are material to a reasonable consumer's purchasing decisions.

7.    Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Chocolate Products throughout the United States, including in this District.

8.    Defendant fails to disclose on its packaging that the Chocolate Products contain (or have a material risk of containing) PFAS.

---

[6] *World's Most Trustworthy Companies 2024,* Newsweek, https://www.newsweek.com/rankings/worlds-most-trustworthy-companies-2024 (last visited Nov. 1, 2024).

[7] J. Muncke, *et al., Impacts of food contact chemicals on human health: a consensus statement,* 19 Environmental Health 25 (2020).

9.    No reasonable consumer would expect, suspect, or understand that the Chocolate Products contain or have a material risk of containing PFAS. This is particularly true given the federal and various state laws that ban PFAS in drinking water, and in some states, in food packaging specifically.

10.    Defendant touts on its website that it has been making "moments of goodness for people around the world" for more than 125 years and is a company "rooted in [its] values: togetherness, integrity, making a difference, excellence."[8] Defendant further claims that it is committed to "being transparent about the ingredients inside your favorite Hershey Products" and that it "hold[s] [itself] to the highest quality, safety, and sustainability standards.[9] In Defendant's 2023 ESG Report, it states that "[c]ommitment to the highest food safety and quality standards is critical to ensuring our products create more goodness for consumers."[10]

11.    Moreover, Defendant represents to its consumers that it knows and understands the importance of packaging its Chocolate Products in toxin and chemical free packaging because it is "a key component of delivering safe, high-quality products to our consumers."[11]

---

[8] *See supra* n. 4.

[9] *About Our Ingredients,* Hershey, https://www.thehersheycompany.com/en_us/home/ingredients/about-our-ingredients.html (last visited Nov. 1, 2024).

[10] *Hershey Goodness in Action, 2023 ESG Report*, Hershey, https://www.thehersheycompany.com/content/dam/hershey-corporate/documents/pdf/hershey-2023-esg-report.pdf (last visited Oct. 31, 2024)

[11] *Sustainable Packaging,* Hershey, https://www.thehersheycompany.com/en_us/home/sustainability/sustainability-focus-areas/environment/packaging.html (last visited Nov. 1, 2024).

12.    However, contrary to Defendant's assurances, the packaging of the Chocolate Products has been shown to contain PFAS.[12] Recently, it was revealed that Defendant is knowingly and/or recklessly selling products with packaging that contain PFAS.[13]

13.    Defendant fails to disclose to consumers that the Chocolate Products contain (or have a material risk of containing) PFAS. Nowhere on the Products' packaging is it disclosed that they contain (or have a risk of containing) PFAS (hereinafter collectively referred to as "Omissions").

14.    Based on the Omissions, no reasonable consumer had any reason to know or expect that the packaging of the Chocolate Products contained PFAS. Furthermore, reasonable consumers like Plaintiff, who were purchasing the Chocolate Products for consumption by themselves and their families, would consider the presence (or risk) of PFAS a material fact when considering whether to purchase the Chocolate Products.

15.    Defendant knows its customers trust the quality of its Chocolate Products and expect the Chocolate Products to be free of PFAS. Defendant also knows that its customers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for Chocolate Products they believe meet these standards. Defendant further knows that reasonable consumers would not knowingly consume, or feed to their families, products that contained PFAS.

---

[12] *See High Levels of Banned PFAS Detected in Hershey's (NYSE: HSY) Packaging. Independent Tests Reveal Widespread Presence of Cancer-Linked "Forever Chemicals" in its Biggest Brands*, Grizzly Research, https://grizzlyreports.com/hsy/ (last visited Nov. 1, 2024).
[13] *Id.*

16.     Defendant knew that the consumers to whom it markets its Chocolate Products would find its Omissions material and that it was in a special position of public trust to those consumers.

17.     The Omissions are deceptive, misleading, unfair, and/or false because the Chocolate Products contain undisclosed PFAS.

18.     The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers who paid a premium price for the Chocolate Products that omitted material information as to the Chocolate Products' true quality and value and/or paid more for the Chocolate Products than they would have had they known the truth about the Chocolate Products. Defendant continues to wrongfully induce consumers to purchase its Chocolate Products.

19.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Classes (as defined herein), who, during the relevant period, purchased for use and not resale any of Defendant's Chocolate Products.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and some members of the proposed classes are citizens of states different from Defendant.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is authorized to conduct business within this District, is headquartered in this District, has intentionally availed itself of the laws in this District, and conducts substantial business, including acts underlying the allegations of this Complaint, in this District.

**PARTIES**

22.    Plaintiff Jada Nettle is, and at all times relevant hereto has been, a resident of Cook County in the State of Illinois.

23.    Plaintiff purchased Defendant's Chocolate Products as recently as October 2024 when she purchased a variety pack of Defendant's Chocolate Products from Costco Wholesale. The variety pack included Hershey's Milk Chocolate Bars, Reese's Peanut Butter Cups, and Kit Kat Bars. Plaintiff also previously purchased Defendant's Hershey's Kisses in December 2023 from Walmart in Bedford Park, Illinois. Plaintiff has repeatedly purchased Hershey's Kisses in December to make Christmas cookies.    Plaintiff believed she was purchasing quality Chocolate Products that did not contain (or have a material risk of containing) PFAS. Plaintiff purchased these Chocolate Products at retail prices in effect at the time of purchase.

24.    Prior to purchasing the products, Plaintiff saw and relied upon the packaging of the Chocolate Products. During the time Plaintiff purchased and consumed the Chocolate Products and due to the Omissions by Defendant, she was unaware that the Chocolate Products contained (or had a material risk of containing) PFAS and would not have purchased, or would have paid less for, the Chocolate Products if that information had been fully disclosed. Plaintiff would be willing to purchase the Chocolate Products in the future if she could be certain that they do not contain (or have a material risk of containing) PFAS.

7

25.     Defendant Hershey is one of the most well-known chocolate companies in the United States and around the world. It has its principal place of business at 19 E. Chocolate Ave., Hershey, Pennsylvania 17033. Defendant maintains its principal office, two manufacturing plants, and an amusement park in Hershey, Pennsylvania. Defendant also maintains additional manufacturing plants in Hazleton, Pennsylvania and Robinson, Illinois.

26.     Defendant manufactures its Reese's Pieces, Reese's Peanut Butter Cups, Hershey's Milk Chocolate bars, Hershey's Kisses, and upon information and belief, Hershey's Cookies 'n' Cream bars in its Hershey, Pennsylvania manufacturing plants.[14] Defendant manufactures its Kit Kat products in its Hazleton, Pennsylvania manufacturing plant.[15] Defendant manufactures its Almond Joy and Mounds in its Robinson, Illinois manufacturing plant.[16]

27.     During the relevant time, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products throughout the United States, including in this District and Illinois. Defendant has done so continuously throughout the relevant period.

---

[14] *Hershey Plant Locations,* Hershey, https://www.thehersheycompany.com/en_us/home/about-us/the-company/plant-locations.html (last visited Nov. 1, 2024).

[15] *Id.*

[16] *Almond Joy & Mounds,* Hershey, https://www.hersheyland.com/almond-joy-mounds (last visited Nov. 1, 2024).

28.    Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Chocolate Products that did not disclose the presence or risk of PFAS.

29.    Plaintiff relied upon the material Omissions missing from the Chocolate Products' packaging, which was prepared, reviewed, and/or approved by Defendant and its agents and disseminated by Defendant and its agents through packaging that contained the Omissions. The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Chocolate Products.

## FACTUAL ALLEGATIONS

### I.    Grizzly Research Reveals Widespread Presence of PFAS in Hershey's Packaging

30.    In October 2024, Grizzly Research published a report detailing the prevalence of PFAS in Hershey's packaging. Grizzly Research tested the packaging of approximately 40 different food products for United States consumer retail, including Defendant's Chocolate Products.  Grizzly Research "believe[s] Hershey's, Reese's, and other [Hershey] brands have severe PFAS contamination that the direct competition can avoid."[17]

---

[17] *See supra* n.11.

## A. Testing Methods; Maximum Total Fluorine Testing and Direct PFAS Compounds Testing

31.     Grizzly Research commissioned four different labs to test Defendant's Chocolate Products: (1) Lab 1_Ger, a startup based in the Germany; (2) Lab 2_Ger, an established lab giant based in Germany; (3) Lab 3_US, an established lab company based in the United States; and (4) Lab 4_Ch, an established lab giant based in China.[18] All four labs tested the Chocolate Products for maximum detected fluorine contamination. Lab 3_US tested the products for six common PFAS molecules directly: hexafluoropropylene oxide dimer acid ("HFPO-DA"), perfluorodecanoic acid ("PFDA"), perfluorohexane sulfonic acid ("PFHxS"), perfluorononanoic acid ("PFNA"), perfluorooctanoic acid ("PFOA"), and perfluorooctane sulfonic acid ("PFOS").[19]

32.     Grizzly Research purchased all samples from common retailers in the United States.[20] The samples were then sent to labs by Grizzly Research for testing.[21]

33.     Each lab had a specific testing method: Lab 1_Ger's testing method was fluorine indication by light reflection spectroscopy on flattened, non-mirroring foil (wrapper inside); Lab 2_Ger's testing method was fluorine indication by ion

---

[18] *Id.* The names of the labs commissioned by Grizzly Research have not been disclosed. For clarity and ease of reference, the stated shortcut lab names used by Grizzly Research in its report have been adopted here.

[19] *Id.*

[20] *Id.*

[21] *Id.*

selection electrode (DIN 13130-1) after Wickbold combustion (wrapper inside); Lab 3_US's testing method was counting the six most common PFAS using a slightly modified EPA method 537.1 on ethanol solution after foil contact (both sides of the wrapper); and Lab 4_Ch's testing method was combustion ion chromatography.[22]

34.    PFAS is a group of thousands of individual compounds, but maximum detected fluorine amounts are a reliable proxy for PFAS contamination in wrappers for candy.[23] Labs 1, 2, and 4 tested for maximum detected fluorine amounts, while Lab 3's maximum detected fluorine amount consisted of the total levels of the six common PFAS it tested for.[24]

35.    Grizzly Research's testing revealed the following for Hershey's Chocolate Products' wrappers[25]:

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

| Maker | Product (U.S. Market) | maximum detected fluorine contamination | | | |
|---|---|---|---|---|---|
| | | Lab 1_Ger | Lab 2_Ger | Lab3_US* | Lab4_Ch |
| HSY | Reese's Peanut Butter Cup (foil) | high fluorine | | | |
| HSY | Reese's Peanut Butter Cup (cups) | NT | | 26.7 mg/kg | |
| HSY | Reese's Pieces | NT | 19.5 mg/kg | 22.9 mg/kg | 23.4 mg/kg |
| HSY | Reese's Pieces (E.U. market) | high fluorine | 81.5 mg/kg | NA | 71.9 mg/kg |
| HSY | Hershey's Kisses (foil or little white flag) | high fluorine | 15 mg/kg | 13.5 mg/kg | NT |
| HSY | Hershey's Milk Chocolate bar | indifferent | | 17.2 mg/kg | |
| HSY | Hershey's Cookies'n'Creme bar | NT | | 11.7 mg/kg | |
| HSY | KitKat bar | NT | 12 mg/kg | | |
| HSY | Almond Joy/Mounds bar** | indifferent | 14.5 mg/kg | 13.9 mg/kg | 33.2 mg/kg |
| HSY | Almond Joy/Mounds bar** (paper inlay) | NT | | | |
| Mars | Snickers bar | no fluorine | | | |
| Mars | Twix bar | NT | | | |
| Mars | Dove Dark Chocolate bar | no fluorine | | | |
| Nestlé | Nestlé Crunch bar | NT | | | |
| Ferrero | Butterfinger bar | NT | | 13.4 mg/kg | |

empty cell = not detected at 10 mg/kg detection limit

*NT* = not testable with method, *NA* = sample not available (issue with logistics/customs)

* totals of the six most common PFAS molecules tested

** Almond Joy and Mounds come in apparently identical packaging foil. For logistical reasons, Lab 2_Ger received Mounds samples, Lab 1_Ger, Lab3_US and Lab4_Ch received Almond Joy samples

36.    Defendant's Chocolate Products were found to have PFAS by the labs commissioned, while the majority of its direct competitors' (Mars and Nestlé) products had no detectable level of PFAS.[26]

37.    Lab 3_US's testing of Defendant's Chocolate Products for six common PFAS also reported the following[27]:

---

[26] *Id.*

[27] *Id.*

**Test of Packaging Foil with Direct Contact to Food by Lab3_US**

| Product | Company | HFPO-DA | PFDA | PFHxS | PFNA | PFOA | PFOS |
|---|---|---|---|---|---|---|---|
| Hershey's Milk Chocolate bar | HSY | | | | | | 17.2 mg/kg |
| Hershey's Cookies 'n' Creme bar | HSY | | | | | 11.7 mg/kg | |
| Reese's Pieces | HSY | 3.4 mg/kg | | 2.8 mg/kg | 1.2 mg/kg | 14.1 mg/kg | 1.4 mg/kg |
| Reese's Peanut Butter Cups | HSY | | | | | | |
| KitKat bar | HSY | | | | | | |
| Hershey's Kisses | HSY | | | | | | 13.5 mg/kg |
| Almond Joy | HSY | | | | | 3.1 mg/kg | 10.8 mg/kg |
| Snickers bar | Mars | | | | | | |
| Twix bar | Mars | | | | | | |
| Dove Dark Chocolate bar | Mars | | | | | | |
| Nestlé Crunch bar | Nestlé | | | | | 1.5 mg/kg | 3.1 mg/kg |
| Butterfinger bar | Ferrero | | | | | | 13.4 mg/kg |

Empty cell = not detected at 1.4 mg/kg detection limit

**Test of Other Packaging Components with Direct Contact to Food by Lab3_US**

| Product | Company | HFPO-DA | PFDA | PFHxS | PFNA | PFOA | PFOS |
|---|---|---|---|---|---|---|---|
| Reese's Peanut Butter Cups, paper cups | HSY | 6.9 mg/kg | 1.2 mg/kg | 2.5 mg/kg | 2.1 mg/kg | 14.0 mg/kg | |
| Almond Joy, paper inlay | HSY | | | | | | 2.9 mg/kg |

Empty cell = not detected at 1.0 mg/kg detection limit

38.    As evidenced above, Lab 3_US reported the presence of at least one of the six common PFAS in almost all of Defendant's Chocolate Products.

## II.    Defendant Omits Any Disclosure of PFAS on Its Packaging

39.    Defendant manufactures, designs, tests, packages, labels, markets, advertises, promotes, distributes, and sells its Chocolate Products throughout the United States, including in Pennsylvania and Illinois.

40.    Defendant's Chocolate Products are available at numerous retail and online outlets throughout the United States, including Pennsylvania and Illinois.

41.    Hershey specifically represents to consumers that it is "committed to transparency and support consumers' right to know what is in their food." Hershey

further represents that it "holds [itself] to the highest quality, safety, and sustainability standards."[28]

42.    However, inconsistent with such assertions about the quality of its products, Defendant knows or should have known that the Chocolate Products contain or have a material risk of containing PFAS yet failed to disclose this fact to consumers.

43.    Defendant intentionally omitted the presence or material risk of PFAS in the Chocolate Products in order to induce and mislead reasonable consumers to purchase the Chocolate Products and pay a price premium for them.

44.    As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence or material risk of PFAS in the Chocolate Products without conducting his or her own scientific tests (which are time consuming and expensive).

45.    Information regarding the true nature and/or presence of PFAS in the Chocolate Products was and is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus concealed the presence and risk of PFAS in the Chocolate Products from Plaintiff and Class members.

### III.    Due to the Presence and Material Risk of PFAS in the Products, the Omissions are Misleading

---

[28] *See supra* n. 4.

### A. PFAS are Forever Chemicals

46.    PFAS were widely used in food packaging products in the past for their water and grease resistant properties.[29] These compounds are known as "forever chemicals" because they do not break down in the environment over time.[30]

47.    The EPA states that "current peer-reviewed scientific studies have shown that exposure to certain levels of PFAS may lead to:

    a.  Reproductive effects such as decreased fertility or increased high blood pressure in pregnant women;

    b.  Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes;

    c.  Increased risk of some cancers, including prostate, kidney, and testicular cancers';

    d.  Reduced ability of the body's immune system to fight infections, including reduced vaccine response;

    e.  Interference with the body's natural hormones; and

---

[29] *Stricter Guidelines on "forever chemicals" in drinking water pose challenges,* Harvard T.H. Chan School of Public Health, https://www.hsph.harvard.edu/news/features/stricter-federal-guidelines-on-forever-chemicals-in-drinking-water-pose-challenges/ (last visited Nov. 1, 2024).
[30] *Id.*

f. Increased cholesterol levels and/or risk of obesity."[31]

48.     The EPA "now considers there is no safe level of PFOA or PFOS exposure."[32]

49.     Research conducted by the Harvard T.H. Chan, School of Public Health in 2012 showed that children with higher PFAS exposure had "a poorer response to routine childhood vaccinations" and that "when PFA exposure was double, children would lose 50% of the antibodies they should have had from their vaccinations."[33] Harvard T.H. Chan's research also showed that "children with higher levels of PFAS when they were born… had lower antibody levels in response to later vaccinations."[34]

50.     Research conducted by the National Cancer Institute's Division of Cancer Epidemiology & Genetics has also shown that PFAS "measured in women during pregnancy were associated with risk of childhood acute lymphoblastic

---

[31] *Our Current Understanding of the Human Health and Environmental Risks of PFAS,* United States Environmental Protection Agency, https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Nov. 1, 2024).
[32] EPA Restricts Toxic PFAS "Forever Chemicals" Found in Drinking Water, National Resources Defense Council, https://www.nrdc.org/press-releases/epa-restricts-toxic-pfas-forever-chemicals-found-drinking-water-0#:~:text=PFOA%20and%20PFOS:%20As%20EPA,standards%20for%20the%20six%20PFAS (last visited Nov. 1, 2024).
[33] *See supra* n.28.
[34] *Id.*

leukemia (ALL) in their offspring."[35] The research found that "[b]ecause PFOS and PFOA can suppress antibody responses, it is plausible for some PFAS to be risk factors for childhood leukemia."[36]

### B. PFAS Used in Food Wrappers Migrate Into The Food Itself

51.    Scientific research studies show that PFAS migrate into foods when PFAS are present in the food packaging:

  a.  A study by Arabela Ramirez Carnero, *et al.* published in the Multidiscipline Digital Publishing Institute in June 2021, *Presence of Perfluoroalkyl and Polyfluoroalkyl Substances (PFS) in Food Contact Materials (FCM) and its Migration to Food*.[37]

  b.  A published study in March 2023, *Directly Fluorinated Containers as a Source of Perfluoroalkyl Carboxylic Acids*, also showed the PFAS can migrate from the fluorinated containers into food.[38]

  c.  Another published study in March 2023, *Per- and Polyfluoroalkyl Substances in Canadian Fast Food Packaging*, stored eight PFAS-contaminated food product wrappers from fast food restaurants in a dark, enclosed area for two years and found as much as an 85% drop in

---

[35] J. K. Loukissas, M.P.P., *Childhood Leukemia Linked to PFAS Levels Measured in Mother's First Trimester,* National Cancer Institute: Division of Cancer Epidemiology & Genetics, https://dceg.cancer.gov/news-events/news/2023/pfas-childhood-leukemia (last visited Nov. 1, 2024).

[36] *Id.*

[37] Arabela Ramirez Carnero, Anitia Lestido-Cardama, Patricia Vazquez Loureiro, Letricia Barbosa-Pereira, Ana Rodriguez Bernaldo de Quiros, Raquel Sendon, *Presence of Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) in Food Contact Materials (FCM) and Its Migration to Food*, Foods 2021, 10(7):1443. DOI: 10.3390/foods10071443.

[38] Heather D. Whitehead and Graham F. Peaslee, *Environmental Science & Technology Letters,* 2023 10(4), 350-355. DOI: 10.1021/acs.estlett.3c00083.

PFAS levels, which proved PFAS breaks off from packaging and thus gets into the food it contacts.[39]

    d.   A study published in March 2020, *Impacts of food contact chemicals on human health: a consensus statement*, called the an "area of certainty" and found that "there is evidence for [PFAS] migration from food contact articles."[40]

    e.   A study published in March 2008 studied the amount of migration that occurs into food-simulating liquids and the characteristics of the migration of PFAS. Migration characteristics were examined in different foods and the results indicated that PFAS can migrate from the food packaging into the food itself.[41]

52.    The United States Food and Drug Administration ("FDA") has stated that it is possible for PFAS "to enter foods through food packaging, processing, and cookware."[42]

---

[39] H. Schwartz-Narbonne, C. Xia, A. Shalin, H. D. Whitehead, D. Yang, G. F. Peaslee, Z. Wang, Y. Wu, H. Peng, A. Blum, M. Venier, M. L. Diamond, *Per- and Polyfluoroalkyl Substances in Canadian Fast Food Packaging*, Environmental Science & Technology Letters 2023 10(4), 343-349. DOI: 10.1021/acs.estlett.2c00926.

[40] *See supra* n.5.

[41] TH Begley, W. Hsu, G. Noonan, G. Diachenko, *Migration of fluorochemical paper additives from food-contact paper into foods and food simulants*. Food Addit Contam Part A Chem Anal Control Expo Risk Assess. 2008 25(3), 384-90. DOI: 10.080/02652030701513784.

[42] *Per- and Polyfluoroalkyl Substances (PFAS)*, United States Food & Drug Administration, https://www.fda.gov/food/environmental-contaminants-food/and-polyfluoroalkyl-substances-pfas (last visited Nov. 1, 2024).

53.    Studies have also shown that a "large proportion of exposure to PFAS for the public occurs through the consumption of contaminated drinking water or food."[43]

**IV.    Certain Federal and State Laws Have Banned PFAS**

54.    No reasonable consumer would expect, suspect, or understand that the Chocolate Products contain or have a material risk of containing PFAS given the current Federal and state laws concerning PFAS.

55.    In April 2024, the EPA released its Final PFAS National Primary Drinking Water Regulation. In doing so, the EPA promulgated a Maximum Contaminant Level Goal ("MCLG") and a Maximum Contamination Level ("MCL"). The MCLG is a non-enforceable health-based goal and was set to zero. The MCL is an enforceable level and was set to 4.0 ppt for PFOA and PFOS, individually. 40 C.F.R. §§ 141.00, *et seq.*

56.    States have also begun implementing policies for addressing PFAS. According to Safer States, a national alliance of environmental health organizations and coalitions working to safeguard people and the planet from toxic chemicals, 30

---

[43] E. Tookmanian, *PFAS and Cancer: Occupation and Environmental Epidemiology Branch Research on "Forever Chemicals,"* National Cancer Institute: Division of Cancer Epidemiology and Genetics https://dceg.cancer.gov/news-events/news/2023/pfas-research (last visited Nov. 1, 2024).

states have already adopted 155 policies pertaining to PFAS, while 34 states have introduced 292 policies.[44]

57.    Thirteen states, including California, Colorado, Connecticut, Hawaii, Maine, Maryland, Minnesota, New Hampshire New York, Oregon, Rhode Island, Vermont, and Washington have already enacted phase-outs of PFAS in food packaging specifically.[45]

## V.    Defendant's Chocolate Products' Packaging Can Be Manufactured Without PFAS

58.    Defendant could have easily manufactured the packaging for its Chocolate Products to be free of PFAS. In fact, Defendant's direct competitors, such as Mars, manufacture packaging with no detectable level of PFAS.[46]

59.    Traditionally, PFAS were used in paper-based food packaging to help make it anti-stick or anti-grease.[47] Experts Grizzly Research spoke to for its investigation were surprised by the high levels of PFAS found in the wrappers of Defendant's Chocolate Productions because there was no need to make plastic

---

[44] *Safer States: Bill Tracker*, Safer States, https://www.saferstates.org/bill-tracker/?toxic_chemicals=PFAS (last visited Nov. 1, 2024).

[45] *Our Priorities: PFAS "Forever Chemicals,"* Safer States, https://www.saferstates.org/priorities/pfas/ (last visited Nov. 1, 2024).

[46] *See supra* n.11.

[47] *Id.*

wrappers anti-stick or anti-grease.[48] There is no need for Defendant to package its Chocolate Products in PFAS-contaminated wrappers.

60.    While the FDA authorizes the use of specific types of substances that contain PFAS for use in food contact applications, food packaging is not one of the authorized uses.[49]

61.    Defendant, just like thousands of other food manufacturers in the United States, can and should be manufacturing its product packaging without PFAS.[50]

## VI.    The Material Omissions Misled and Deceived Reasonable Consumers

62.    The popularity of Defendant's Chocolate Products is directly tied to consumers' trust in the Hershey brand. Consumers trust Defendant to produce and sell reliable products that are not contaminated with toxins or chemicals.

---

[48] *Id.*
[49] *Authorized Uses of PFAS in Food Contact Applications*, United States Food & Drug Administration, https://www.fda.gov/food/process-contaminants-food/authorized-uses-pfas-food-contact-applications (last visited Nov. 1, 2024).
[50] *FDA, Industry Actions End Sales of PFAS Used in Food Packaging,* United States Food & Drug Administration, https://www.fda.gov/news-events/press-announcements/fda-industry-actions-end-sales-pfas-used-us-food-packaging (last visited Nov. 1, 2024).

63.    As Defendant touts, Hershey was recognized as one of the World's Most Ethical Companies by Ethisphere, a global leader in advancing the standards of ethical business practices.[51]

64.    The Omissions wrongfully convey to consumers that Defendant's Chocolate Products are of a high quality and have certain characteristics that they do not actually possess.

65.    Defendant misleadingly causes consumers to believe its Chocolate Products do not contain PFAS due to the material Omissions, when in fact the Chocolate Products contain or have a material risk of containing undisclosed levels of PFAS, which is material information to reasonable consumers and Plaintiff.

66.    For example, the testing conducted by Grizzly Research of Defendant's Chocolate Products showed that its Reese's Pieces had a PFOA level of 14.1 mg/kg and a PFOS level of 1.4 mg/kg.[52]

67.    Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) PFAS in the Chocolate Products.

---

[51] *Being a Responsible and Ethical Business*, Hershey, https://www.thehersheycompany.com/en_us/home/sustainability/sustainability-focus-areas/ethics.html (last visited Nov. 1, 2024).
[52] *See supra* n.11.

68.    Due to the Omissions, reasonable consumers, like Plaintiff, would not suspect the presence of PFAS in the Chocolate Products. Unlike Defendant, reasonable consumers are not able to independently detect the presence of PFAS in the Chocolate Products and are generally without the means to conduct their own scientific tests on the Chocolate Products. Moreover, information regarding the presence of PFAS in the Chocolate Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of PFAS in the Chocolate Products.

69.    Reasonable consumers must and do rely on Defendant to honestly report what its Chocolate Products contain.

70.    Based on the failure to disclose the PFAS on the packaging, no reasonable consumer would expect, suspect, or understand that the Chocolate Products contained or had a material risk of containing PFAS.

71.    In light of Defendant's statements regarding the quality of the Chocolate Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Chocolate Products contained or had a material risk of containing PFAS.

72.    Defendant had a duty to ensure the Chocolate Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

73.    Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

74.    Defendant knew that properly and sufficiently monitoring the Chocolate Products for PFAS was not only important, but critical.

75.    Defendant knew or should have known it could control the levels of PFAS in the Chocolate Products by requiring proper monitoring and testing for PFAS at manufacturing and packaging stages, and effecting changes when needed.

76.    The Omissions are material and reasonably likely to deceive reasonable consumers, such as Plaintiff, in their purchasing decisions. This is especially true considering Defendant's long-standing campaign built on trust and its campaign to market itself as a "values-driven" company that is committed to "being transparent about the ingredients inside" Hershey products.[53]

77.    The Omissions make the Chocolate Products' packaging deceptive based on the presence or risk of PFAS in the Chocolate Products. Reasonable consumers, like Plaintiff, would consider the presence or risk of PFAS in the

---

[53] *See supra* n.8.

Chocolate Products a material fact when considering which chocolate products to purchase.

78.     Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Chocolate Products or ingredients used in the Chocolate Products for PFAS.

79.     The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of PFAS in the Chocolate Products.

80.     Defendant knew or should have known that the Chocolate Products contained or may contain undisclosed levels of PFAS that were not disclosed on the packaging.

81.     Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Chocolate Products and their packaging for PFAS to ensure the quality of the Chocolate Products.

82.     Defendant knew or should have known that reasonable consumers paid higher prices for the Chocolate Products and expected Defendant to sufficiently test and monitor the Chocolate Products and their packaging for the presence of PFAS.

83.     The Omissions are material and render the Chocolate Products' packaging deceptive because without full disclosure, reasonable consumers believe the Chocolate Products do not contain or have a material risk of containing PFAS.

84.    The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the members of the Classes to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

85.    As a result of Defendant's Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, Plaintiff and similarly situated consumers who paid the purchase price or premium for the Chocolate Products.

86.    Plaintiff and other reasonable consumers would not have purchased the Chocolate Products or would have paid less for them but for Defendant's Omissions concerning the presence (or material risk of the presence) of PFAS in the Chocolate Products.

## **CLASS ALLEGATIONS**

87.    Plaintiff brings this action individually and on behalf of the following Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (3), and (c)(4):

**Nationwide Class**: All persons who, during the applicable statute of limitations to the present, purchased the Chocolate Products in the United States for household use, and not for resale (the "Nationwide Class").

**Illinois Subclass**: All persons who, during the applicable statute of limitations to the present, purchased the Chocolate Products in Illinois for household use, and not for resale (the "Illinois Subclass").

88.    Members of the Nationwide Class and the Illinois Subclass are sometimes, where appropriate, referred to herein collectively as "Class Members" or the "Classes."

89.    Excluded from the Classes are Defendant, any of Defendant's parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

90.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

91.    **Numerosity**: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

92.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

   a.  Whether Defendant owed a duty of care;

27

b.  Whether Defendant owed a duty to disclose;

c.  Whether Defendant knew or should have known that the Products contained or may contain PFAS;

d.  Whether Defendant failed to disclose that the Products contained or may contain PFAS;

e.  Whether the claims of Plaintiffs and the Classes serve a public benefit;

f.  Whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

g.  Whether the Omissions are material to a reasonable consumer;

h.  Whether the inclusion of PFAS in the wrapper of the Products is material to a reasonable consumer;

i.  Whether the Omissions are likely to deceive a reasonable consumer;

j.  Whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

k.  Whether Defendant breached its duty of care;

l.  Whether Defendant breached its duty to disclose;

m. Whether Defendant violated the laws of the State of Pennsylvania;

n.  Whether Defendant violated the laws of the State of Illinois;

o.  Whether Defendant engaged in unfair trade practices;

p.  Whether Defendant engaged in false advertising;

q. Whether Plaintiff and members of the Classes are entitled to actual, statutory, treble, and punitive damages; and

r. Whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

93. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of all the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

94. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

95. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiff. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Classes and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

96.    **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class.

97.    **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff and proposed Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Classes and making final injunctive relief appropriate with respect to the proposed Classes as a whole. Defendant's practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the proposed Classes as a whole, not on individual facts or law applicable only to Plaintiff.

98.    **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Classes. The injuries suffered by each individual member of the Classes are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Classes to obtain effective relief from Defendant. Even if

Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## COUNT ONE
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statute §§505/I, *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

99.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 98 above, as though fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendant.

101.    Plaintiff, the Illinois Subclass, and Defendant are "persons" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. §505/1(c).

102.    The Chocolate Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. §505/1(b).

103.    There was a sale of merchandise within the meaning of 815 Ill. Comp. Stat. §505/1(d).

104.   Defendant's Omissions, concealment, and other deceptive conduct as described herein constitutes a violation of the ICFA, 815 Ill. Comp. Stat. §505/1, et seq.

105.   Defendant violated the ICFA when it knowingly concealed, omitted, or failed to disclose that the Chocolate Products contained (or had a material risk of containing) PFAS.

106.   Defendant knew or should have known the Chocolate Products did not have the quality, ingredients, or standards as described above because they contained (or had a material risk of containing) undisclosed levels of PFAS.

107.   Defendant intended that Plaintiff and the Illinois Subclass would rely on its Omissions, concealment, and other deceptive conduct regarding the Chocolate Products' quality, ingredients, and standards when deciding to purchase the Chocolate Products, unaware of the undisclosed material facts.

108.   The facts concealed or not disclosed by Defendant were material facts in that Plaintiff, the Illinois Subclass, and other reasonable consumers would have considered them in deciding whether to purchase the Chocolate Products. Had Plaintiff and members of the Illinois Subclass known the Chocolate Products did not have the quality, ingredients, and standards as advertised by Defendant and instead contained (or had a material risk of containing) PFAS, they would not have purchased the Chocolate Products or paid the premium price.

109.   Defendant's Omissions, concealment, and other deceptive conduct as described herein repeatedly occurred in the course of Defendant's trade or commerce and were capable of deceiving a substantial portion of the consuming public.

110.   Defendant's Omissions and other deceptive acts or practices caused Plaintiff and the Illinois Subclass to suffer injury in the form of actual damages when they purchased the Chocolate Products that were worth less than the price they paid and that they would not have purchased had they known the Chocolate Products contained (or had a material risk of containing) PFAS.

111.   As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above, Plaintiff and the Illinois Subclass are entitled to actual damages, compensatory damages, injunctive relief, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

112.   Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Illinois Subclass to an award of punitive damages defined under the ICFA, 815 ILCS 505/1(f).

**COUNT TWO**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 & 201-2 & 201-3, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

113.   Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 98, as though fully set forth herein

114.    Plaintiff, Defendant, and the Nationwide Class are "[p]erson[s]" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 PS § 201-2, *et seq.*

115.    The Pennsylvania UTPCPL declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce …."

116.    The UTPCPL at 73 P.S. § 201-3 prohibits the following conduct: "(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" and "(ix) Advertising goods or services with intent not to sell them as advertised."

117.    Defendant engaged in, and continues to engage in, the above-reference deceptive acts and unfair trade practices in the conduct of business, trade, and commerce, including by omitting material facts regarding its Chocolate Products. Defendant's Chocolate Products contain (or risk containing) PFAS. Defendant knew or should have known that its Chocolate Products should not contain PFAS given the health risks, and that by manufacturing and providing for commercial sale food wrapped in dangerous PFAS that migrate into the food itself, Plaintiff and the Nationwide Class members were not receiving safe and healthy food products.

118.   Plaintiff relied on Defendant's deceptive acts, unfair trade practices, and Omissions, which are described above. Plaintiff has suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices.

119.   Defendant's wrongful conduct caused Plaintiff and the Nationwide Class to suffer an ascertainable loss by causing them to incur substantial expense in purchasing Defendant's Chocolate Products which they reasonably believed were safe when these products contained (or risked containing) dangerous PFAS. Plaintiff and the Nationwide Class have suffered an ascertainable loss by receiving other than what was promised.

120.   Plaintiff and the Nationwide Class members would not have purchased the Chocolate Products at issue, or would have paid less, had they known the truth about the presence (or risk) of dangerous PFAS.

121.   Defendant's actions described herein constitute fraud within the meaning of the UTPCPL § 201 et seq. by containing (or risking containing) dangerous PFAS and failing to properly represent, by omission, the safety of Defendant's Chocolate Products. Defendant's actions were likely to mislead Plaintiff and the Nationwide Class into believing the products were safe when they in fact contained (or risked containing) dangerous PFAS.

122.   If Defendant had not sold its Chocolate Products that contained (or risked containing) dangerous PFAS, Plaintiff and the Nationwide Class members would not have suffered the extent of damages caused by Defendant's sales.

123.   Defendant's violations present a continuing risk to Plaintiff and the Nationwide Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest and are highly likely to deceive a substantial portion of the consuming public.

124.   As a direct and proximate result of Defendant's business practices, Plaintiff and the Nationwide Class members suffered injury in fact and lost money or property because they purchased and paid for products they otherwise would not have. Plaintiff and the Nationwide Class members are entitled to injunctive relief and attorneys' fees and costs.

125.   Pursuant to Pennsylvania UTPCPL § 201-4.1, Plaintiff and the Nationwide Class members seek an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiff and the Nationwide Class members full restitution of all monies wrongfully acquired by it by means of such "unlawful" and "unfair" conduct, so as to restore any and all monies to Plaintiff and the Nationwide Class members which were acquired and obtained by such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained by Defendant.

126.    Plaintiff and the Nationwide Class members are entitled to treble actual damages of not less than $100, plus reasonable attorneys' fees and costs. *See* 73 P. S. § 201-9.2.

## COUNT THREE
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class,
### or Alternatively, the Illinois Subclass)

127.    Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 98, as though fully set forth herein.

128.    Substantial benefits have been conferred on Defendant by Plaintiff and the members of the Classes through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

129.    Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Chocolate Products would not contain PFAS. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

130.    Defendant was obligated to disclose the presence of PFAS in the Chocolate Products because:

    a.    Defendant had exclusive knowledge of the presence of PFAS in the Chocolate Products that were not known or reasonably accessible to Plaintiff and the members of the Classes; and

b.  Defendant actively concealed the presence of PFAS from Plaintiff and the members of the Classes.

131.  Defendant's acceptance and retention of the benefits of the payments from Plaintiff and the members of the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the members of the Classes.

132.  Plaintiff and the members of the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

133.  Plaintiff and the members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT FOUR
### Fraud by Omission
### (On Behalf of Plaintiff and the Nationwide Class,
### or Alternatively, the Illinois Subclass)

134.  Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 98 above, as though fully set forth herein.

135.  Defendant knew or should have known the Chocolate Products contained or may contain undisclosed PFAS.

136.   Plaintiff and the members of the Classes and Defendant acted within the context of a business transaction when Plaintiff and the members of the Class purchased Defendant's Chocolate Products for household use, and not for resale.

137.   Defendant actively and knowingly concealed from and failed to disclose to Plaintiff and the members of the Class, that the Chocolate Products contained undisclosed levels of PFAS.

138.   As a food manufacturer, Defendant is in a special position of trust upon which consumers rely.

139.   Defendant was under a duty to disclose to Plaintiff and the members of the Classes the true quality, characteristics, ingredients, and suitability of the Products because:

    a.  Defendant was in a superior position to know the true state of facts about its products;

    b.  Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Chocolate Products for consumption by consumers; and

    c.  Defendant knew that Plaintiff and the members of the Classes could not reasonably have been expected to learn or discover the presence or risk of inclusion of PFAS without Defendant disclosing it on the Chocolate Products' packaging.

140.   Defendant knew its customers trust the quality of its products and expect the Chocolate Products to be free of PFAS. Defendant also knew that certain consumers seek out and wish to purchase Chocolate Products that are free of contaminants and that these consumers will pay more for Chocolate Products that they believe possess these qualities.

141.   Due to the Omissions on the Chocolate Products' packaging, Defendant had a duty to disclose the whole truth about the presence of PFAS in the Chocolate Products to Plaintiff and the members of the Classes.

142.   Defendant acted in bad faith when it intended that Plaintiff and the members of the Classes would rely on the Omissions when purchasing the Chocolate Products, unaware of the undisclosed material facts.

143.   Defendant was under a duty to disclose the presence of PFAS because Defendant undertook the disclosure of information about the Chocolate Products on the Chocolate Products' packaging.

144.   Defendant failed to discharge its duty to disclose the presence of PFAS in the Chocolate Products.

145.   Defendant allowed its packaging to intentionally mislead consumers, such as Plaintiff and the members of the Classes.

146.   The facts concealed or not disclosed by Defendant to Plaintiff and the members of the Classes are material in that a reasonable consumer would have

considered the presence of PFAS important when deciding whether to purchase the Chocolate Products.

147.  Defendant knew or should have known the Omissions were material to Plaintiff's and the members of the Classes' decisions to purchase the Chocolate Products and would induce Plaintiff and the members of the Classes to purchase the Chocolate Products.

148.  Defendant intentionally concealed the presence of PFAS in the Chocolate Products with intent to defraud and deceive Plaintiff and the members of the Classes.

149.  Plaintiff and the members of the Classes justifiably relied on Defendant's Omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Chocolate Products and inherently unfair to consumers of the Chocolate Products, such as Plaintiff and the members of the Classes.

150.  As a direct and proximate result of Defendant's conduct, Plaintiff and the members of the Classes have suffered actual damages in that they purchased Chocolate Products that were worth less than the price they paid and that they would not have purchased had they known the Chocolate Products included undisclosed PFAS.

151.   Plaintiff and the members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as to each and every count, including:

(a)   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

(b)   An order enjoining Defendant from selling the Chocolate Products until the PFAS are removed or full disclosure of the presence of same appears on all packaging;

(c)   An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

(d)   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

(e)   An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

(f)   An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(g)   An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(h)   An order requiring Defendant to pay punitive damages on any count so allowable;

(i)   An order awarding attorneys' fees and costs to Plaintiff and the Classes; and

(j)   An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims so triable.

Dated: November 1, 2024                    Respectfully submitted,

*/s/ Vincent A. Coppola*
**PRIBANIC & PRIBANIC**
Vincent A. Coppola, Esq.
513 Court Place
Pittsburgh, PA  15219
Telephone:  412-735-6490
vcoppola@pribanic.com

**GEORGE FELDMAN MCDONALD, PLLC**
Janine Pollack, Esq.*
745 5th Avenue, Suite 500
New York, NY 10151
Telephone: (917) 983-2707
jpollack@4-justice.com
eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman, Esq.*
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
lfeldman@4-justice.com
eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
Brittany L. Sackrin, Esq.*
9897 Lake Worth Road, Suite #302
Lake Worth Corridor, Florida
Telephone: (561) 232-6002
bsackrin@4-justice.com
eservice@4-justice.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter, Esq.

44

1617 JFK Boulevard, Suite 1550
Philadelphia, Pennsylvania 19103
Telephone: (212) 277-5770
tpeter@faruqilaw.com

\* *Pro hac vice* application forthcoming

*Attorneys for Plaintiff and the Putative Class*